T.C. Memo. 2021-136

UNITED STATES TAX COURT

HONG JUN CHAN AND SUZHEN MEI, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 21904-19.                    Filed December 1, 2021.

Hong Jun Chan and Suzhen Mei, pro sese.

<u>Halvor R. Melom</u>, for respondent.

MEMORANDUM OPINION

LAUBER, <u>Judge</u>:  Petitioners operated a restaurant in California, which was incorporated in 2010.  In 2011 petitioner husband filed with the Internal Revenue Service (IRS or respondent), on behalf of the restaurant, a Form 2553, Election by a Small Business Corporation, by which it elected to be treated as an S corporation, i.e., an entity whose tax treatment would be governed by subchapter S of the In-

**Served 12/01/21**

[*2] ternal Revenue Code (Code).[1]  But contrary to the requirements of subchapter S, petitioners did not report results of the restaurant's operations on their 2015 Federal income tax return, and they filed no return for 2016.  The IRS determined substantial deficiencies for both years, determining the restaurant's gross income by use of a bank deposits analysis but allowing no deductions for the costs of operating the restaurant.  The IRS also determined an accuracy-related penalty under section 6662(a) for 2015 and additions to tax under sections 6651(a)(1) and (2) and 6654 for 2016.

Respondent has moved for summary judgment sustaining the deficiencies, penalty, and additions to tax set forth in the notices of deficiency.  Petitioners contend that the restaurant was a C corporation and that this case "has nothing to do with personal income."  We agree with respondent on that point:  Because the entity elected to be taxed as an S corporation, its income is passed through to its shareholders and must be reported on their individual tax returns.  But because there exist disputes of material fact regarding the remaining issues in the case, we will grant respondent's motion only in part.

---

[1]All statutory references are to the Code in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.  We round all monetary amounts to the nearest dollar.

[*3]                              Background

The following facts are derived from the parties' pleadings and motion papers, including the accompanying declarations and exhibits. See Rule 121(b). When filing their petition, petitioners represented that they resided in California, and the California address listed in their petition remains their address of record with this Court.[2]

Petitioner husband is the founder of Younique Café, Inc. (YCI), a California corporation. He filed articles of incorporation for YCI in August 2010 and subsequently decided to convert it to an S corporation. On March 7, 2011, he filed on YCI's behalf a Form 2553, electing that the restaurant be treated as an S corporation for Federal income tax purposes. He signed the form as the president of YCI and requested that the conversion be effective January 1, 2011.

The Form 2553 was sent to the IRS by certified mail, and it was stamped "received" by the IRS Ogden Service Center on March 11, 2011. It was stamped "received" by the IRS "entity department" three days later. The Form 2553 stated that petitioner husband owned 40% of YCI's shares and that two other people each owned 30%. There is no indication that petitioner wife owned any YCI shares.

---

[2]The petition was filed in December 2019. In a recent filing petitioners stated that they moved to Illinois in 2017.

**[*4]**    In October 2016 petitioners timely filed a joint Federal income tax return for 2015, reporting wages of $47,500 and a total tax liability of $2,816.  They did not report any income or expenses attributable to YCI.  Petitioners filed no return for 2016.  YCI apparently ceased operations in 2017, as indicated by a certificate of dissolution submitted by petitioner husband in July 2017 and filed by the California secretary of state in September of that year.

In 2019 the IRS initiated an examination of petitioners' 2015 and 2016 tax years.  The revenue agent (RA) who conducted the examination found no evidence in IRS records that YCI had ever filed a corporate income tax return of any sort.  She determined that YCI had made a valid election to be treated as an S corporation and hence that its income was properly reportable on its shareholders' individual returns.  After summonsing records from two of YCI's banks, the RA determined that YCI had made taxable deposits of $1,139,879 in 2015 and $731,444 in 2016.

On September 12, 2019, the IRS issued petitioners a notice of deficiency for 2015, determining a deficiency of $408,312 and an accuracy-related penalty of $81,662.  The notice determined that YCI for 2015 had "gross receipts or sales" of $1,139,879 and that petitioner husband had "ordinary income from [a] trade or

[*5] business" of $1,139,879. The notice thus presumed that petitioner husband was YCI's sole shareholder.

Because petitioners failed to file a return for 2016, the IRS prepared for them separate substitutes for returns (SFRs), as authorized by section 6020(b). The SFR for petitioner husband determined that YCI for 2016 had "gross receipts or sales" of $731,444, and that petitioner husband had "ordinary income from [a] trade or business" of $731,444. The SFR again presumed that petitioner husband was YCI's sole shareholder. As an alternative position, in the event petitioner husband's YCI shares were determined to be community property, the SFR stated that "the income should be allocated 50% to each spouse." Reflecting that alternative position, the SFR for petitioner wife determined that for 2016 she had ordinary income from a trade or business of $365,722 (i.e., 50% of $731,444).

On September 12, 2019, the IRS issued petitioners separate notices of deficiency for 2016 on the basis of the SFRs. The notices determined a deficiency of $259,990 against petitioner husband, a deficiency of $115,164 against petitioner wife, and additions to tax under sections 6651(a)(1) and (2) and 6654.

On December 11, 2019, petitioners timely petitioned this Court for redetermination. Proceeding pro se, they did not dispute that YCI had gross revenues of $1,139,879 for 2015 and $731,444 for 2016. But they asserted that YCI was a

[*6] C corporation and that its revenues "have nothing to do with 1040 Form personal income."

In January 2021 respondent attempted to conduct informal discovery. He asked petitioners to supply (among other things) all documents on which they rely to show that YCI was a C corporation. After petitioners failed to respond to these requests, respondent on May 5, 2021, filed a request for admissions (RFA) to which were attached various exhibits, including the SFRs, the notices of deficiency, YCI's articles of incorporation, YCI's Form 2553, and IRS account transcripts for YCI and petitioners. Petitioners did not respond to the RFA, and they have not disputed the authenticity of the documents attached as exhibits to the RFA.

On July 2, 2021, respondent filed a motion for summary judgment. In that motion he urges that we sustain the deficiency and penalty determined against petitioners for 2015, and that we sustain the deficiency and additions to tax determined against petitioner husband for 2016. Respondent asserts that "the sole issue raised in the petition is a dispute as to whether petitioners' wholly-owned corporation [YCI] was an S corporation or a C corporation during * * * 2015 and 2016." Urging that YCI was an S corporation and that petitioners have shown no genuine dispute of material fact on that point, respondent contends that the deficiencies, penalty, and additions to tax should be sustained.

**[\*7]**  In response petitioners contend that YCI was a C corporation at all relevant times.  As exhibits to their responses they attached copies of Forms 1120, U.S. Corporation Income Tax Return, prepared on YCI's behalf for fiscal years ending July 31, 2016 and 2017.  The first document shows gross revenues of $1,110,432 and a loss of $20,742; the second document shows gross revenues of $701,790 and a loss of $38,563.  Both forms indicate preparation by a professional return preparer, but neither shows a preparer signature or date.  Both returns are signed by petitioner husband as president of YCI, but neither signature bears a date.  Petitioners have supplied no evidence (such as a certified mail receipt) to show that these documents were actually filed with the IRS.[3]

## Discussion

### A.    Summary Judgment Standard

The purpose of summary judgment is to expedite litigation and avoid costly, time-consuming, and unnecessary trials.  Fla. Peach Corp. v. Commissioner, 90 T.C. 678, 681 (1988).  We may grant summary judgment or partial summary judgment when there is no genuine dispute as to any material fact and a decision may

---

[3]Petitioners attribute their failure to respond to IRS discovery requests to their alleged move to Illinois after YCI proved to be "a failed business operation." Although their former landlord received mail addressed to YCI, petitioners allegedly did not receive that mail until they recently visited California.

**[*8]** be rendered as a matter of law.  Rule 121(b); <u>Sundstrand Corp. v. Commis-</u><u>sioner</u>, 98 T.C. 518, 520 (1992), <u>aff'd</u>, 17 F.3d 965 (7th Cir. 1994).  Where the moving party properly makes and supports a motion for summary judgment, "an adverse party may not rest upon the mere allegations or denials of such party's pleading" but must set forth specific facts, by affidavit or otherwise, showing that there is a genuine dispute for trial.  Rule 121(d).  We conclude that YCI's entity status for Federal income tax purposes is susceptible to summary adjudication.

B.    <u>Analysis</u>

1.    <u>YCI's Tax Status</u>

The IRS' determinations in a notice of deficiency are generally presumed correct, and taxpayers bear the burden of proving them erroneous.  <u>See</u> Rule 142(a).  Petitioners contend that they are liable for no deficiencies because YCI was a C corporation, not an S corporation, during 2015 and 2016.

An S corporation is a "small business corporation for which an election under section 1362(a)" has been made.  Sec. 1361(a)(1).  S corporations are afforded special treatment under the Code.  "One of the benefits of S corporation tax status is that income earned by the entity escapes corporate-level taxation." <u>Mourad v. Commissioner</u>, 121 T.C. 1, 3 (2003), <u>aff'd</u>, 387 F.3d 27 (1st Cir. 2004).

[*9] "Thus, an S corporation's income passes through the entity and is, generally, taxed only at the shareholder level on a pro rata basis." Ibid.; see secs. 1363, 1366.

Section 1362 specifies the procedure for electing S corporation status. If an entity qualifies as a "small business corporation" (petitioners do not dispute that YCI so qualified), it may make an election "on or before the 15th day of the 3d month of the taxable year." Sec. 1362(b)(1)(B). To make an election the entity must file "a completed Form 2553." Sec. 1.1362-6(a)(2)(i), Income Tax Regs. Petitioners do not dispute that petitioner husband timely filed "a completed Form 2553" on March 7, 2011, that this form was received by the IRS, or that YCI's election complied with all applicable requirements.

Once an entity elects S corporation status, the election is effective "for all succeeding taxable years." Sec. 1362(c); see Mourad, 121 T.C. at 4 ("An election to be an S corporation continues until terminated."). The election will be terminated if and only if (1) the shareholders make an affirmative revocation, (2) the entity ceases to be a "small business corporation," or (3) the entity's passive investment income exceeds 25% of its total gross receipts for the previous three years. See sec. 1362(d). Petitioners do not allege that any terminating event occurred during 2015 or 2016 (or previously). They thus have no basis to dispute

[*10] that YCI was an S corporation during 2015 and 2016. As a shareholder of YCI, petitioner husband is taxed on a pro rata basis. See sec. 1366(a)(1)(A).[4]

In their response to the motion for summary judgment petitioners argue that YCI must have been a C corporation because it allegedly filed Forms 1120 for 2015 and 2016. We disagree. First, the IRS has no record of YCI's having filed any type of tax return for these years. The Forms 1120 attached to petitioners' responses are not signed or dated by the alleged return preparer, and petitioners have submitted no evidence (such as a certified mail receipt) to show that these documents were actually filed with the IRS. In any event the filing of a Form 1120 on behalf of an entity does not terminate a valid election by the entity to be treated as an S corporation. See sec. 1.1362-6(a)(3)(i), Income Tax Regs. (providing that an entity may revoke its election by filing, with a specific IRS office, a revocation statement containing specified information).

2.    Other Issues

We conclude that summary judgment should be denied as to all remaining issues in the case. The RA used the bank deposits method to estimate YCI's in-

---

[4]The IRS determined that 100% of YCI's income passed through to petitioner husband on the theory that he was its sole shareholder. However, the entity's Form 2553 identifies two other individuals as owning 60% of its stock.

[*11] come.  Proceeding pro se, petitioners in their petition did not dispute the RA's numbers.  But the Forms 1120 attached to their responses show different revenue figures for YCI (on a fiscal year basis).  The RA allocated 100% of YCI's gross income to petitioner husband, but the Form 2553 shows him as owning only 40% of YCI's shares.  There is no evidence in the current record to show that the ownership interests changed.  Taking these facts together, and making allowances for petitioners' pro se status, we conclude that the determination of YCI's gross income for 2015 and 2016 (and petitioners' pro rata shares of its income) should be reserved for further proceedings.

The RA allowed no deductions for cost of goods sold or the expenses incurred in operating the restaurant.  The burden of proving entitlement to deductions and credits is on petitioners.  See Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992).  The Forms 1120 attached to their responses allege that YCI incurred significant costs for (among other things) food, rent, wages, and utilities, allegedly generating losses for both years.  It is obvious that the restaurant incurred expenses, and we think petitioners should have the opportunity to prove what they were.  Their liability for a penalty for 2015 and for additions to tax for 2016 likewise raises factual questions.

[*12] Viewing the facts and the inferences drawn from the facts in the light most favorable to petitioners, we conclude that summary judgment must be denied on these points. Whether the documents on which petitioners rely support their claims to deductions and losses presents questions of fact ill-suited for summary adjudication. See Commissioner v. Heininger, 320 U.S. 467, 475 (1943) ("Whether an expenditure is directly related to a business and whether it is ordinary and necessary are doubtless pure questions of fact in most instances."); Pac. Mgmt. Grp. v. Commissioner, T.C. Memo. 2018-131, 116 T.C.M. (CCH) 181, 189 (same).[5] Accordingly, we will deny respondent's motion to the extent it asks us to sustain the deficiencies, additions to tax, and penalty.

To reflect the foregoing,

An order will be issued granting in part and denying in part respondent's motion for summary judgment.

_____

[5]Respondent argues that petitioners have conceded the deduction issue because they failed to raise it in the petition. See Rule 34(b)(4). We disagree. In their petition they contested the deficiencies, urging that "[t]here * * * [are] no tax liabilities due." This is sufficient. See Gray v. Commissioner, 138 T.C. 295, 298 (2012) ("All claims in a petition should be broadly construed so as to do substantial justice, and a petition filed by a pro se litigant should be liberally construed."), supplemented by 140 T.C. 163 (2013).